UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| **Joyce M. Greene,** | ) | **COMPLAINT** |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO._____ |
| v. | ) | |
| | ) | |
| **ARS National Services, Inc., and** | ) | |
| **Associated Recovery Systems,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

1. This is an action brought by the Plaintiff, Joyce M. Greene, for actual and statutory damages, attorney's fees, and costs for Defendants violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (hereinafter "FDCPA"). The Plaintiff also seeks compensatory and punitive damages for the Defendants' violations of South Carolina common law set forth herein.

## JURISDICTION AND VENUE

2. This Court has Jurisdiction under 15 U.S.C. §1692k (d), and 28 U.S.C. §1331, §1332, and §1367.

3. Venue is proper in the Florence Division because the Plaintiff resides in Florence County and the Defendants transacted business in this division.

## PARTIES

4. The Plaintiff, Joyce M. Greene, is a resident and citizen of the State of South Carolina, Florence County, and is over the age of twenty-one (21) years.

5.  The Defendant, ARS National Services, Inc. (hereinafter referred to as "ARS"), is a California corporation and can be served through its registered agent for service of process, Corporation Service Co., 1703 Laurel Street, Columbia, South Carolina 29201. The Defendant was in all respects and at all times relevant herein doing business in the state of South Carolina and is registered with the Secretary of State of South Carolina. Defendant ARS is engaged in the business of collecting consumer debts from consumers residing in Florence County, South Carolina and is a "debt collector," as defined by the FDCPA 15 U.S.C. § 1692a(6).

6.  The Defendant Associated Recovery Systems (hereinafter referred to as "Associated"), is a California corporation and can be served through its registered agent for service of process, Corporation Service Co., 1703 Laurel Street, Columbia, South Carolina 29201. The Defendant was in all respects and at all times relevant herein doing business in the state of South Carolina and is registered with the Secretary of State of South Carolina. Defendant ARS is engaged in the business of collecting consumer debts from consumers residing in Florence County, South Carolina and is a "debt collector," as defined by the FDCPA 15 U.S.C. § 1692a(6).

7.  Defendants ARS and Associated each participated in, and contributed to, the acts that injured and damaged the Plaintiffs as set forth herein below. Each of said parties acted as principal and agent, each of the other, and combined and concurred each with the other in committing the acts that injured the Plaintiffs herein.

## FACTUAL ALLEGATIONS

8. From September 2009, and continuing through June 2010, the Defendants, their agents and employees, have called the Plaintiff over 100 times with the intent to harass, annoy, and intimidate the Plaintiff.

9. On or about September 28, 2009, the Plaintiff received a call from Lena, an employee of the Defendants. Lena stated she worked for Capital One and she was calling to collect on the account. Lena then offered to settle the account for 50% of the balance owed. The Plaintiff explained that she did not have any money and that she could not pay more than $25.00 per month because she was on a fixed income. Lena then stated that the Plaintiff had to pay at least 10% of the balance and then $100.00 per month. The Plaintiff was then put on hold to speak with a supervisor. Maria, claiming to be a supervisor, came on the line and stated that the Plaintiff would have to pay at least $40.00 per month. The Plaintiff again explained that she did not have the money to make the payments. Maria responded that the Plaintiff needed to borrow the money from family or friends, but the Plaintiff stated she had noone from whom she could borrow the money. Maria made a final offer of $25.00 per month to be paid by bank draft. The Plaintiff requested that Maria put the agreement in writing and provide her an address so she could mail a payment in because she would not agree to a bank draft. Maria then stated that the Plaintiff needed to speak with another supervisor, to which the Plaintiff responded that she would not do business by phone. The Plaintiff ended the call by stating that she had no money to make payments and asking the

      Defendants not to call her anymore.

10. On or about October 9, 2009, Lena again called the Plaintiff. During this conversation Lena stated that "this bill must be paid soon." The Plaintiff again explained that she did not have any money, and she asked Lena not to call her any more, to only contact her through the mail. That same day and less than two hours later, Lena called the Plaintiff.

11. On or about November 13, 2009, the Plaintiff spoke with Josaline, an employee of the Defendants. During this conversation, Josaline told the Plaintiff that if she did not make a payment that day, then the account would be marked as a refusal to pay. The Plaintiff again stated that she could not afford to pay anything on this account and asked that the Defendants stop calling her.

12. On or about November 14, 2009, the Defendants sent the Plaintiff a letter stating that "EFFECTIVE 11-19-2009: Your account status in this office will be downgraded to 'Refusal to Pay.'"

13. On or about November 24, 2009, the Plaintiff received a call from the Defendants. The caller asked for Joyce, but once the Plaintiff stated she was Joyce, the caller hung up. The Plaintiff received two calls from the Defendants on November 25, 2009. The first caller, Edie, stated he was calling from ARS and needed payment on the account. Less than 20 minutes later, the Plaintiff received a call from the same number. When the Plaintiff answered the phone this time, the caller asked for Joyce and then disconnected the call.

14. The Plaintiff continued to receive numerous calls from the Defendants where the phone would ring, the Plaintiff would answer, a voice would ask for Joyce, and then after several minutes, would hang up. On December 10, 2009, the Plaintiff received three calls like this.

15. On or about December 16, 2009, the Defendants called the Plaintiff demanding that a payment be made or the account would be marked as "refusal to pay." The Plaintiff told the caller that she did not have any money and again told the Defendants to stop calling.

16. On December 18th, 21st, two times on the 23rd, and 28th, the Plaintiff continued to receive harassing telephone calls from the Defendants wherein the Defendants would call the Plaintiff's phone, ask for Joyce and then no actual person would ever come on the line.

17. On or about December 28, 2009, the Defendants sent the Plaintiff a letter stating "Because of your failure to respond to our requests for payment, as of 01-02-2010 we will continue to assume this debt is valid and that you do not wish to settle this debt for less than the original balance. Therefore, unless you respond to this notice by 01-02-2010:

    - Your status in this office will be downgraded to 'Refusal to Pay'
    - All previous settlement offers will be voided
    - We may recommend further collection efforts on your account."

18. On December 29, 2009, the Plaintiff received three calls from the Defendants within

10 minutes. The last calls resulted in the Defendants leaving a message that stated "This is for Joyce Greene. This is not a telemarketer or sales person, but a personal matter. We need to discuss this right away." This message did not identify the company calling. However, the number matched the two previous calls which were from the Defendants.

19. On December 29, 2009, the Defendants also began calling the Plaintiff's sister's home and leaving the same message on the Plaintiff's sister's answering machine.

20. In January, 2010, two more calls were made to the Plaintiff's sister's home. At the time the Defendants made these calls, they were also calling the Plaintiff's home number and the Plaintiff had spoken with them numerous times.

21. On or about January 26, 2010, the Defendants sent the Plaintiff a letter asking if she was "weary of talking to bill collectors?" and if she was "tired of getting collection letters?."

22. The Defendants continued to call the Plaintiff's home from January 2010 through June 2010. The Defendants repeatedly left messages on the Plaintiff's phone that failed to disclose the name of the company calling. The Defendants also continued to call the Plaintiff using an autodialer. When the Plaintiff would answer these calls, there would be silence and then after a period of time the call would be disconnected.

## COUNT ONE
## FAIR DEBT COLLECTIONS PRACTICES ACT

23. The Plaintiff adopts the averments and allegations of paragraphs 5 through 22 hereinbefore as if fully set forth herein.

24. Defendants have engaged in collection activities and practices in violation of the Fair Debt Collection Practices Act (hereinafter referred to as "FDCPA") with respect to the Plaintiff's alleged consumer debt.

25. Defendants violated §1692c(a)(1) by contacting the Plaintiff at a time or place Defendant knew or should have known was inconvenient to the Plaintiff.

26. The Defendants violated §1692c(b) by communicating with a third party without the Plaintiffs' consent.

27. Defendants violated §1692d by engaging in conduct the natural consequence of which was to harass, oppress, or abuse the Plaintiff by repeatedly telephoning the Plaintiff with the intent to annoy, abuse, or harass the Plaintiff in an effort to coerce her into paying a debt in violation of §1692d(5).

28. Defendants violated the FDCPA by repeatedly leaving messages for the Plaintiff which failed to provide the required notice that the communication was from a debt collector and would be used to collect a debt, violating 15 U.S.C. § 1692e(11) and/or 1692f; and failed to provide the proper notice of the identity of the debt collector as required by 15 U.S.C. § 1692d(6) (debt collector must make meaningful disclosure of identity in calls).

29. As a proximate result of Defendants' actions, the Plaintiff was caused to suffer actual damages for worry, humiliation, fear, frustration, loss of peace and quiet, loss of sleep, anxiety, nervousness, physical sickness, physical pain and mental anguish.

## COUNT TWO
## NEGLIGENT TRAINING AND SUPERVISION

30. The Plaintiff adopts the averments and allegations of paragraphs 5 through 29 hereinbefore as if fully set forth herein.

31. Defendants knew or should have known of the conduct set forth herein which was directed at and visited upon the Plaintiff.

32. Defendants knew or should have known that said conduct was improper and in violation of the FDCPA and South Carolina law.

33. Defendants negligently failed to train and supervise collectors in order to prevent said improper conduct.

34. Defendants negligently failed to train and supervise collectors on the FDCPA and South Carolina law as it relates to communications with consumers.

35. As a result of the Defendants' negligence, the Plaintiff suffered humiliation, loss of sleep, anxiety, nervousness, physical sickness, physical and mental suffering, pain, and anguish.

## COUNT THREE
## RECKLESS AND WANTON TRAINING AND SUPERVISION

36. The Plaintiff adopts the averments and allegations of paragraphs 5 through 35 hereinbefore as if fully set forth herein.

37. Defendants knew or should have known of the conduct set forth herein which was directed at and visited upon the Plaintiff.

38. Defendants knew or should have known that said conduct was improper and in

violation of the FDCPA and South Carolina law.

39. Defendants recklessly and wantonly failed to train and supervise collectors in order to prevent said improper conduct.

40. Defendants recklessly and wantonly failed to train and supervise collectors on the FDCPA and South Carolina law as it relates to communications with consumers.

41. As a result of the Defendants' recklessness and wantonness, the Plaintiff suffered humiliation, loss of sleep, anxiety, nervousness, physical sickness, physical and mental suffering, pain, and anguish.

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against the Defendants as follows:

   a. Statutory damages of $1,000 for the Plaintiff from each Defendant for its violations of the FDCPA (15 U.S.C. §1692k);

   b. Actual damages for Defendants' violations of the FDCPA;

   c. Costs and reasonable attorney's fees from Defendants pursuant to 15 U.S.C. § 1692k;

   d. Compensatory and punitive damages against Defendants in an amount to be determined by a struck jury on Plaintiff's state law claims for damages due to the Defendants' Negligent Training and Supervision, and Reckless and Wanton Training and Supervision;

   e. For this matter to be heard by a jury; and

  f. For such other and further relief as the Court may deem just and proper.

              /s/ Penny Hays Cauley
              Penny Hays Cauley, Fed ID #10323
              Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
549 West Evans Street, Suite E
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY ON ALL COUNTS**

              /s/ Penny Hays Cauley
              Penny Hays Cauley

**DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL**
ARS National Services, Inc.
c/o Corporation Service Co., Registered Agent
1703 Laurel Street
Columbia, SC 29201

Associated Recovery Systems
c/o Corporation Service Co., Registered Agent
1703 Laurel Street
Columbia, SC 29201